## J. B. Lewis and Emma Lewis v. The State.

No. 20638.  Delivered  January  24,  1940.
Rehearing  Denied  February  21,  1940.

The opinion states the case.

*J. T. Wright,* of Tatum, for appellants.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

GRAVES, Judge.

Appellants, man and wife, were convicted by the jury of the theft of property over the value of fifty dollars, and their punishment assessed at two years each in the penitentiary.

This is a case of circumstantial evidence, and was so submitted to the jury. We have searched the record for any testimony of any kind that tends to connect Emma Lewis with this offense, and confess that we find none at all. No witness connects her with any taking of this property, which was alleged to have been $250.00 in money, and there being absent any instruction in the court's charge relative to the law of principals, we are of the opinion that the testimony relative to her participation in this alleged theft is insufficient.

The testimony relative to J. B. Lewis is entirely circumstantial. Monroe Cato, an old negro man seventy-five years old, and Fannie Cato, his wife, was sixty-seven years old. Fannie was sick unto death, and two days before her death she reached under the pillow of the bed whereon she lay and took out a ten dollar bill and paid the doctor who was attending her. There remained under such pillow in a long flat purse $255.00 in money, consisting of two $20 bills, twenty-one $10 bills, and one $5 bill. Upon her death search was made for this money and none was found. Appellant, J. B. Lewis, was Fannie Cato's nephew, and when the undertaker arrived, and a conversation was had with Monroe relative to paying the undertaker, Monroe told the undertaker, in the presence of J. B. Lewis, that J. B. had stolen the money, and that they would have to pay $10 per month. To this statement by Monroe Cato appellant J. B. Lewis answered nothing, but did tell the undertaker that he would get the money, $75.00, to pay for his deceased aunt's funeral. The undertaker and J. B. Lewis went to two different places, J. B. Lewis attempting to borrow the money, but he was not successful. However, eventually he did go into his own house and produce eight $10 bills to pay for the funeral expenses and gave same to the undertaker. Monroe Cato saw these bills, and said they looked like the stolen bills, but they had no marks of identification thereon. It also seems that on the day his aunt was buried appellant J. B. Lewis was engaged in a crap game with some other negroes and two white men, and was seen in possession of five or six dollars, as well as a ten dollar bill. On the next day he was again seen with a ten dollar bill which was utilized by him in a hog trade. It was also shown that on the day of the above mentioned crap

game, on the day Fannie Cato was buried, appellant J. B. Lewis told a witness that his aunt had died and left him and his wife $250.00, and wanted to borrow $10.00 from the witness, stating that he had $90.00 more at home. He also told such witness that he had recently bought a car and wanted to register it.

Although the possession of so many bills was explained by appellant J. B. Lewis, such explanation seemed not to have been satisfactory to the jury, and we do not feel that their judgment should be disturbed.

Complaint is made of the verdict of the jury in that it is claimed that it is only the verdict of one juror and not that of the jury as a whole. It reads as follows: "We, the Juror find the defendants J. B. Lewis and Emma Lewis guilty and assess their punishment (2 Two) years in the penitentiary each. R. H. Bush, Foreman."

Mr. Branch in his Penal Code, p. 331, Sec. 646, says: "Verdicts should receive a liberal rather than a strict construction, and if the finding of the jury can be reasonably ascertained the verdict should be held good as to form. The object should be to ascertain the intention of the jury," citing a long list of cases.

Again in same section "The misspelling of, or the omission of the word 'jury,' or the use of the word 'juror,' or 'jurors' instead of the word 'jury' will not vitiate an otherwise good verdict," again citing many cases, the case of Zunago v. State, 63 Texas Crim. Rep. 58, 138 S. W. 713, being peculiarly in point hereon.

The charge of the court directed the jury to return a separate verdict as to each defendant, but the jury failed to do so, evidently overlooking that part of the charge. Such a direction being given probably in order to make clear the action and punishment to be meted out to one or both of the defendants. However the jury in their caution wrote such a plain and understandable verdict that separate verdicts did not become necessary in order to a clear understanding of what they intended to do. We see no error reflected in such a verdict.

Complaint is made relative to paragraph five of the court's charge. We note there were neither objections nor exceptions taken to such charge, and same was not excepted to in any way, nor called to the trial court's attention. These objections therefore now come too late.

The overruling of appellants' motion for a continuance was a matter addressed to the discretion of the court, and we see no abuse thereof.

The judgment in so far as it affects Emma Lewis is reversed and remanded; in so far as it affects J. B. Lewis, the judgment is affirmed.

### ON APPELLANT'S MOTION FOR REHEARING.

KRUEGER, Judge.

Appellant J. B. Lewis, bases his motion for a rehearing on two grounds: The first is that the trial court erred in overruling his motion for a continuance. The application for a continuance was not based upon any statutory but wholly on equitable grounds. Hence the granting or refusal of the same rested solely within the sound discretion of the trial court. This court would not be justified, under the facts as revealed by the record, in overturning his action thereon.

His second contention is that the evidence is insufficient to sustain his conviction. In our opinion this is without merit. While the evidence is somewhat meagre, we think it sufficient as a basis for the jury's conclusion of appellant's guilt. We do not deem it necessary to again set out the facts and circumstances proven upon the trial, inasmuch as the same were fully discussed in the original opinion.

The motion for a rehearing is accordingly overruled.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.